IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

ELOY SANCHEZ, PHILIP CASTANEDA, §
ALBERT LUCIO, JOHN ASHCRAFT and §
FRANCISCO LOPEZ, at the Cameron §
County Jail § CIVIL ACTION
 §
vs. § NO. B-93-260
 §
CAMERON COUNTY, TEXAS §

### APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT

Plaintiffs, ELOY SANCHEZ, ET. AL., hereby move the court for a preliminary injunction under the authority of FRCP 65(a), enjoining Cameron County and the State of Texas, their officers, agents, employees, and all those in active concert or participation with them from incarcerating prisoners more inmates in the Cameron County Jail than allowed by Texas Jail Standard (467 inmates or 85% of the number of bunks in the facility), and respectfully would show the Court as follows:

### INTRODUCTION

The Plaintiffs have brought this Sec. 1983 action to redress the violation of their constitutional rights. The overcrowding has resulted in conditions that constitute a violation Plaintiff's Eighth and Fourteenth Amendment rights prohibiting cruel and unusual punishment.

APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED
BRIEF IN SUPPORT - 1

## Evidence Supporting Preliminary Injunction

This cause is set for evidentiary hearing on June 9, 1994 at 10:30 a.m. Plaintiffs anticipate that the following facts will be proved in the course of this hearing:

1. Despite the statutory provisions requiring the Institutional Division to accept inmates who are awaiting transfer following conviction of a felony or revocation of parole, probation or mandatory supervision, Cameron County has been forced to house these inmates because of the refusal of the Texas Department of Criminal Justice to accept those inmates that they are bound by statute to accept.

2. Despite the overcrowded conditions of the Cameron County Jail, the Pardon and Paroles Division of the Texas Department of Criminal Justice has continued to house persons charged with technical violations of the terms of their paroles or mandatory supervisions in the Cameron County Jail.

3. The Cameron County Jail Population, overcrowded to nearly double its capacity, deprives inmates of basic human needs. Many sleep on the floor. An inadequacy of space and inadequate supervision results in assaults. The risk and actual incidence of communicable diseases is high and constitutes punishment beyond that for which any of the inmates were sentenced. Deliberate indifference to these constitutional deprivation by Defendants allows these violations to continue.

4. The ongoing construction of new jail facilities will not remedy these problems. Even after completion, the jail

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT** - 2

population will be in excess of constitutional standards. Moreover, jail population increases are foreseeable and without other remedial measures building alone will not remedy these deprivations. See <u>Stone v. City and County of San Francisco</u>, 968 F.2d 850, 858 (9th Cir. 1992).

### EIGHTH AMENDMENT APPLICATION TO THE CAMERON COUNTY JAIL

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, <u>Robinson v. California,</u> 370 U.S. 660, 666, 82 S. Ct. 1417 (1962), prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. In <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285 (1976) the United States Supreme Court first acknowledged that this provision could be applied to some deprivations that were not specifically part of the sentence but were suffered during imprisonment. Moreover, a civil rights action under Sec. 42 U.S.C Sec. 1983 is the proper remedy for a state prisoner who is making constitutional challenge to the conditions of his prison life. <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S. Ct. 407 (1972).

The standards of Eighth Amendment review of the conditions of a prisoners confinement were reviewed and reaffirmed in a case involving a prisoner's exposure to environmental tobacco smoke by the Supreme Court in <u>Helling v. McKinney</u>, ___ U.S. ____, 113 S.Ct. 2475 (1993). It is undisputed that the treatment a prisoner receives and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. As stated by the Court in <u>De Shaney v. Winnebago County Dept. of Social Services</u>, 489 U.S.

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 3**

189, 199-200, 109 S.Ct. 998, 1005-1006 (1989):

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being.... [W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs--e.g., food, clothing, shelter, medical care, and reasonable safety--it transgresses the substantive limits on state action set by the Eighth Amendment...."

Contemporary standards of decency require no less. <u>Estelle v. Gamble</u>, supra, 429 U.S., at 103-104, 97 S.Ct., at 290-291. The prohibition against cruel and unusual punishment "is not limited to specific acts directed at selected individuals, but is equally pertinent to general conditions of confinement that may prevail at a prison." <u>Gates v. Collier</u>, 501 F.2d 1291, 1301 (5th Cir. 1974). As stated in <u>Gates</u>, "Each factor separately , I.e., overcrowding dormitory barracks, lack of classification according to severity of offense, untrained inmates with weapons, lack of supervision by civilian guards, absence of a procedure for confiscation of weapons, may not rise to constitutional dimensions; however, the effect of the totality of these circumstances is the infliction of punishment on inmates violative of the Eighth Amendment, as determined by the trial court. Id. at 1309.

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 4**

*Estelle* elaborated a standard of "deliberate indifference" that must be proved; accidental or inadvertent failure to provide care will not violate the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. ___, 111 S.Ct. 2321 (1993) holds that a claim that the conditions of prisoner's confinement violates the Eighth Amendment requires an inquiry into the prison officials' state of mind. "Whether one characterizes the treatment received by [the prisoner] as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the "deliberate indifference" standard articulated in *Estelle*." *Id.* at ___ , 111 S.Ct., at 2327.

There is no requirement that the prisoners show current health problems; the Eighth Amendment does protect against subjecting the prisoner to the risk of future health problems. *Helling*, at 2480. *Helling* notes that in *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565 (1978), the inmates in punitive isolation were crowded into cells and that some of them had infectious maladies such as hepatitis and venereal disease. This was one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed. A prison inmate could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery. Nor may prison officials be

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 5**

deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no current symptoms.

This requested relief addresses the overcrowding of the Cameron County Jail, based on the adverse impact this overcrowding has on the abilities of the inmates to receive life's necessities. We recognize that simply lodging of more inmates than intended by the architect does not rise to a constitutional violation. Only when overcrowding results in deprivations denying the "minimal civilized measure of life's necessities" are they sufficiently grave to form the basis of an Eighth Amendment violation. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 101 S. Ct. 2392, 2399 (1981).

## **THE STANDARD FOR GRANTING PRELIMINARY INJUNCTIVE RELIEF IN CASES OF CONDITIONS OF INCARCERATION**

To be entitled to permanent injunctive relief from a constitutional violation, Plaintiffs must first establish the fact of a violation. <u>Rizzo v. Goode</u>, 423 U.S. 362, 377, 96 S.Ct. 598, 607 (1976). We must then demonstrate the presence of two elements: continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law. <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 500, 506, 79 S.Ct. 948, 954 (1959). If the plaintiff makes such a showing, the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation. <u>Newman v. Alabama</u>, 683 F.2d 1312 (11th Cir. 1982).

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT** - 6

The first two elements are met if the Plaintiffs prove that the overcrowding results in deprivation of the minimal civilized measure of life's necessities. In overcrowding cases, the irreparable injury results from the ongoing incarceration. The court is referred to the treatment of these standards in <u>Newman v. Alabama,</u> *Id.* in which the court states in footnote 17: "In this context, the issues of inadequate legal remedy and irreparable injury are closely related; we thus do not address the irreparable injury element separately." *Id.* at 1319. The third element of inadequacy of the legal remedy is met in an overcrowding case in the absence of a preexisting consent decree under which the contempt may be urged. *Id.* at 1320.

In fashioning a remedy to redress constitutional violations, the court should show deference to penal authorities and avoid involving itself intimately in the administration of the prison system. <u>Procunier v. Martinez</u>, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974). "But a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." <u>Johnson v. Avery</u>, 393 U.S. 483, 486, 89 S.Ct. 747, 749 (1969).

Federal courts possess whatever powers are necessary to remedy constitutional violations because they are charged with protecting these rights. <u>Hutto</u>, 437 U.S. at 687 n. 9, 98 S.Ct. at

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 7**

2572 n. 9; <u>Milliken v. Bradley (Milliken II)</u>, 433 U.S. 267, 280-281, 97 S.Ct. 2749, 2757-58 (1977). "[T]he lower courts have learned from repeated investigation and bitter experience that judicial intervention is *indispensable* if constitutional dictates--not to mention considerations of basic humanity-- are to be observed in the prisons." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 353-54, 101 S.Ct. 2392, 2402-03, (1981) (Brennan, J., concurring) (footnotes omitted); *see also Smith*, 611 F. 2d at 1044 ("the federal courts have the power, and the duty, to make their intervention [into operations of prisons] effective"). Moreover, otherwise valid state laws or court orders cannot stand in the way of a federal court's remedial scheme if the action is essential to enforce the scheme. <u>Stone v. City and County of San Francisco</u>, 968 F.2d 850 (9th Cir. 1992).

What, then, may the court do to remedy an overcrowded jail? "[A] district court in exercising its remedial powers may order a prison's population reduced in order to alleviate unconstitutional conditions, but the details of inmate population reduction should largely be left to prison administrators." <u>Newman v. Alabama</u>, at 1320-1321. The 11th Circuit under the facts of <u>Newman v. Alabama</u> found that the trial court was overly intrusive in naming the actual 400 inmates to be released and setting accelerated parole eligibility dates on fifty others, but confirmed that ordering a reduction in the population was within the power of the Court.

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 8**

Indeed, the authority of this court to order relief is "coterminous with the scope of the constitutional violation found to exist." <u>Williams v. Edwards</u>, 547 F.2d 1206, 1212 (1977). Moreover, the lack of funds does not justify operating a jail in an unconstitutional manner. The court may set out short term, intermediate and long-term relief, and if the order requires as incidental and ancillary consequence the expenditure of state funds that is not forbidden. *Id.* at 1213. The court may order the presence of two guards in open dormitories at all times. *Id.* The court may forbid new additions to the inmate population. *Id.* at 1215. The court may order that Defendants submit a detailed long-range plan for constitutional operation of the facility within 180 days. *Id.* at 1218. The court may grant the Sheriff power to release prisoners before they have served their entire sentence. <u>Stone</u> at 863-864. If other remedies are found to be inadequate, the court may expand the power of the sheriff to release inmates even if the empowerment overrides state law. *Id.* at 864. The standard for review of the court's broad equitable remedial powers is abuse of discretion. <u>Swann v. Charlotte-Mecklenburg Bd. of Educ.</u>, 402 U.S. 1, 15, 91 S.Ct. 1267 (1971); <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1246 (1982). An abuse of discretion occurs when "no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found." <u>Stone</u> at 861 note 19.

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 9**

## TEXAS STATUTORY PROVISIONS IMPACTING JAIL INMATES

The Texas Penal Code, Sections 12.31 through 12.34, provides that individuals convicted of felonies shall be punished by confinement in the Institutional Division of the Texas Department of Criminal Justice. The Texas Code of Criminal Procedure, Article 42.09, provides that a convicted felon must be transferred to the Institutional Division when his sentence is pronounced and his paperwork is completed. Article 6166r of the Texas Revised Civil Statutes provides that the Director of the Texas Department of Criminal Justice shall make suitable provisions for the safe transportation of inmates from the counties when the inmates are sentenced to the Institutional Division. Article 42.18 of Texas Code of Criminal Procedure provides for the detention of a person whom the members of a parole panel have reason to believe has violated the conditions of his parole or mandatory supervision until that person is released or returned to the Institutional Division. There is no statutory provision that requires the detention and housing of such prisoners in the Cameron County Jail. Section 499.071 of the Government Code provides that the Board of the Texas Department of Criminal Justice shall adopt and enforce an allocation formula to fairly and equitably allocate admissions into the Institutional Division among the counties.

The Texas Jail Standards sets out space per inmate requirements that the population of the Cameron County Jail far exceeds. This overpopulation causes the violation of other specific standards of the jail including classification and

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 10**

supervision. It is true that "constitutional questions do not arise merely because a state prisoner has been treated at variance with state law." <u>Gates v. Collier</u>, 501 F.2d 1291, 1302 (5th Cir. 1974). Such failure to comply with state norms can be "significant," however, in making a finding regarding constitutionality. *Id.* State codes reveal to the court the minimum standards by which the state itself proposes to govern itself concerning habitability. Such a standard is a valuable reference for what is minimal for human habitation in the public view, this serving as an indicator of evolving notions of decency." <u>Newman v. Alabama</u>, 683 F.2d 1312, 1330 n.14 (11th Cir. 1982). State codes are also a valuable index into what levels of decency the public, expressing itself through the Legislature, is prepared to pay for. <u>Williams v. Edwards</u>, 547 F.2d 1206, 1214 (1977).

### **IMMEDIATE AND INTERMEDIATE TERM RELIEF REQUESTED**

The Plaintiffs request that the numbers within the jail be reduced to comply with constitutional standards. Accordingly we would suggest a series of steps that would lead to a prompt redress of this unconstitutional condition:

1. All prisoners who are convicted felons and whose paperwork is presently completed under the requirements Article 42.09, Texas Code of Criminal Procedure, (hereinafter "paper ready prisoners") must be transferred to the Institutional Division of the Texas Department of Criminal Justice and the Institutional Division of the Texas Department of Criminal Justice must make suitable

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 11**

provisions for the safe transportation of these prisoners within 30 days.

2. All prisoners who are charged with technical violations of the terms of their paroles or mandatory supervision sentences must be transferred to the Institutional Division of the Texas Department of Criminal Justice and the Institutional Division of the Texas Department of Criminal Justice must make suitable provisions for the safe transportation of these prisoners within 30 days. If the jail population is not then under 85% of the bunks in the facility, then the following step must be taken:

3. All prisoners who become "paper ready prisoners" after this date must be transferred to the Institutional Division of the Texas Department of Criminal Justice and the Institutional Division of the Texas Department of Criminal Justice must make suitable provision for the safe transportation of these prisoners within 10 days of becoming "paper ready prisoners." If the jail population is not then under 85% of the bunks in the facility, at the conclusion of 60 days, then the following step must be taken:

4. Prisoners who are accused, but not convicted, of misdemeanor offenses must be released, first releasing those who have been incarcerated longest, until the jail population is under 85% of the bunks in the facility. If, despite the release of those prisoners accused, but not convicted of misdemeanor offenses, the jail population is not then under 85% of the bunks in the facility, at the conclusion of 60 days, then the following step must be taken:

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 12**

5. Prisoners who are convicted, of misdemeanor offenses must be released, first releasing those who have served the largest percentage of their sentence, until the jail population is under 85% of the bunks in the facility.

WHEREFORE, Plaintiffs pray that this Court:

(a) enter a preliminary injunction mandating that the State of Texas Defendants make suitable provisions for the safe transportation of all prisoners who are convicted felons and whose paperwork is presently completed under the requirements Article 42.09, Texas Code of Criminal Procedure to the Institutional Division of the Texas Department of Criminal Justice within 30 days.

(b) enter a preliminary injunction mandating that the State of Texas Defendants make suitable provisions for the safe transportation of all prisoners who are charged with technical violations of the terms of their paroles or mandatory supervision sentences to the Institutional Division of the Texas Department of Criminal Justice within 30 days.

c) enter a preliminary injunction mandating that the State of Texas Defendants  make suitable provisions for the safe transportation of all prisoners who are convicted felons and whose paperwork is newly completed under the requirements Article 42.09, Texas Code of Criminal Procedure to the Institutional Division of the Texas Department of Criminal Justice within 10 days of the completion of the paperwork by Cameron County.

d) enter a preliminary injunction mandating that Cameron County release any prisoner  accused, but not convicted, of a misdemeanor offense who has been incarcerated in the jail longer than any other misdemeanor prisoner if the jail population exceeds 85% of the number of bunks in the facility.

e) enter a preliminary injunction mandating that Cameron County release any prisoner convicted of a misdemeanor offense who has

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 13**

been incarcerated in the jail longer than any other prisoner convicted of or accused of a misdemeanor, if the jail population exceeds 85% of the number of bunks in the facility.

f) award Plaintiffs' attorneys' fees pursuant to 42 U.S.C. Sec. 1988; and

g) award Plaintiffs such other and further relief to which they may show themselves justly entitled.

Respectfully submitted,

**COSTILLA & STAPLETON, P.C.**
1325 Palm Boulevard
P.O. Drawer 4417
Brownsville, Texas 78520
210/541-4981
210/544-3152 (FAX)

_____
**Ed Stapleton**
**State Bar No. 19058400**
**Federal I.D. No. 1501**

Carter C. White
State Bar No. 21290300
Federal I.D. No.
Attorney at Law
252 Juanita Way
San Francisco, CA 94127
415/665-4173

Juan Jose Martinez
Attorney at Law
P.O. Box 8099
Brownsville, Texas 78520
210/350-5591

**ATTORNEYS FOR PLAINTIFFS**

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 14**

# CERTIFICATE OF SERVICE

This is to certify that on this the 20th day of May, 1994 a true and correct copy of the above and foregoing **APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT** has been served to the following counsel as follows:

Mr. Richard Burst
Assistant District Attorney
974 E. Harrison
Brownsville, Texas 78520
Hand Delivered

Mr. John B. Worley
Assistant Attorney General
P.O. BOx 12548
Capitol Station
Austin, Texas 78711-2548
CM/RRR #P 869 270 978

_____
Ed Stapleton

**APPLICATION FOR PRELIMINARY INJUNCTION and INCORPORATED BRIEF IN SUPPORT - 15**