IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES DISTRICT COURh
SOUTHERN DISTRICT OF TEXAS
FILED

JUL 18 1994

MICHAEL N. MILBY, CLERK

| | | |
|---|---|---|
| JOSE RAUL CASTILLO,<br>FRANCISCO LOPEZ,<br>ELOY SANCHEZ, and<br>all those similarly situated,<br><br>Plaintiffs; | § § § § § § § | |
| vs. | § § | CIVIL ACTION NO. B-93-260 |
| CAMERON COUNTY, TEXAS,<br><br>Defendant and<br>Third-Party Plaintiff; | § § § § § | |
| vs. | § § | Rule 23(b)(2) Class Action |
| THE STATE OF TEXAS AND ANN<br>RICHARDS; JAMES RILEY; CAROL<br>S. VANCE; JERRY H. HODGE;<br>JOSHUA W. ALLEN, SR.; THOMAS<br>DUNNING; JUDGE GILBERTO<br>HINOJOSA; ALLAN B. POLUNSKI;<br>R. H. DUNCAN, SR.; ELLEN J.<br>HALBERT AND JOHN R. WARD<br>(each in his or her official<br>capacity only),<br><br>Defendants and<br>Third-Party Defendants. | § § § § § § § § § § § § § § § | |

# PLAINTIFFS' POST-HEARING BRIEF
# ON PRELIMINARY INJUNCTION
# AGAINST STATE DEFENDANTS

CNIPDF - www.faxio.com

In this brief, Plaintiffs endeavor to explain why preliminary injunctive relief is presently appropriate against the State Defendants.[1] Plaintiffs will respond to the arguments presented by the State Defendants at the recent hearing and in their Response to Plaintiffs' Application for a Preliminary Injunction, and then explain why Plaintiffs have established all four prerequisites for preliminary injunctive relief.

## I. State Defendants' Arguments

For ease of reference, Plaintiffs will respond to the State Defendants' arguments as they chose to present these arguments in their Response to Plaintiffs' Application for a Preliminary Injunction.

### A. Notice

The State Defendants argue that they did not receive monitors' reports apprising them of unconstitutional conditions in Cameron County's detention facilities, so they cannot be deliberately indifferent (liable) for conditions about which they did not know. But no authority requires notice through monitors' reports to establish deliberate indifference. To the contrary, the Court recently addressed the specific question of what "deliberate indifference" means in *Farmer v. Brennan*, 61 U.S.L.W. 4446 (June 6, 1994):

> Whether a prison official had the requisite knowledge of a substantial risk [which establishes "deliberate indifference"] is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a

---

[1] State Defendants are all defendants in the above-styled case except Cameron County, Texas. Plaintiffs do not imply that injunctive relief is unnecessary against Cameron County, Texas. Rather, Plaintiffs intend only to limit their arguments *in this document* to why injunctive relief should issue against the State Defendants.

> factfinder may conclude that a prison official knew of a
> substantial risk from the very fact that the risk was obvious.
>
> ...
>
> [A] prison official ... would not escape liability if the evidence
> showed that he merely refused to verify underlying facts that
> he strongly suspected to be true, or declined to confirm
> inferences of risk that he strongly suspected to exist.

*Id.* at 4451 & n.8 (citations omitted).  Moreover, the Court confirmed that deliberate

indifference is to be determined in light of officials' "attitudes and conduct at the time suit

is brought and persisting thereafter." *Id.* at 4452.

Farmer obliterates any notice argument of the State Defendants.  Even if this Court

does not accept the uncontroverted testimony of Cameron County officials that they begged

the State Defendants to accept more paper-ready prisoners to alleviate overcrowding *before*

this suit was filed, surely the State Defendants received notice through this lawsuit.  Yet the

State Defendants still refuse to act.

B. Totality of Circumstances

The State Defendants contend that *Wilson v. Seiter*, 111 S.Ct. 2327 (1991) prohibits

this Court from finding a constitutional violation based on the totality of the circumstances

at Cameron County's detention facilities, and requires instead evidence of "the deprivation

of a single, identifiable human need." *Id.* at 2327.

Foremost, the evidence presented at the hearing met the *Wilson* standard.  Doctor

Stern's testimony that only luck has prevented a tuberculosis epidemic at the overcrowded

jail is uncontroverted.  *Cf. Helling v. McKinney*, 113 S.Ct. 2475 (1993) (health risk posed

by inmate's exposure to second-hand smoke is cruel and unusual punishment because it poses an unreasonable risk of serious future health problems that society considers so grave as to violate contemporary standards of decency). Cameron County officials' testimony that assaults, violence, and riots have happened and will likely happen again due to overcrowding is uncontroverted. *Cf. Farmer*, 62 U.S.L.W. at 4451 ("a prisoner seeking 'a remedy for unsafe conditions [need not] await a tragic event such as an actual assault before obtaining relief.'"). And the testimony about detainees having to stand for hours in their cells or continuously sleep on the floor because the cells are so overcrowded establishes deprivation of another identifiable human need: shelter. *Cf. Hutto v. Finney*, 437 U.S. 678, 685-88 & n.9 (1978) (upholding order to halt "an ongoing violation" in prison conditions that included extreme overcrowding).

Perhaps even more critical than the fact that Plaintiffs have met *Wilson*'s standard, the State Defendants' belief that this standard applies shows that they have missed a fundamental theme in this litigation: Plaintiffs include not only prisoners, but *pre-trial detainees*. Texas law requires Cameron County to detain those who a state judge commits to jail pending bail or trial. But these people are of course still presumed innocent under our tradition of criminal procedure. The Fourteenth Amendment proscribes *all* punishment of pre-trial detainees, not just the cruel and unusual punishment specified by the Eighth Amendment and discussed in *Wilson*. *See Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979) ("[T]he Government may detain [a person who has not been convicted of a crime only] to ensure his presence at trial and may subject him to the restrictions and conditions of the

detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.").

*Wilson* addresses only the rights of convicted prisoners under the Eighth Amendment. *Jones v. Diamond*, 636 F.2d 1364 (5th Cir.), *cert. granted*, 452 U.S. 959, *cert. amended*, 453 U.S. 911, *cert. dismissed*, 453 U.S. 951 (1981), however, addresses the constitutional rights of pre-trial detainees. The *Jones* court held that "[t]he *combined impact* of [severe overcrowding, lack of detainee classification, inadequate protection from attack, and denial of exercise] made confinement in the Jackson County jail ... of pre[-]trial detainees punishment per se." *Id.* at 1374 (emphasis added); *see also, Lareau v. Manson*, 651 F.2d 96 (2d Cir. 1981) (overcrowded jail conditions became unconstitutionally punitive for pre-trial detainees after fifteen days). Accordingly, contrary to the State Defendants' argument, this Court can conclude from a totality-of-circumstances analysis that overcrowded conditions violate the constitutional rights of at least the pre-trial detainee subset of the Plaintiff class.

## C. State Defendants' Duties

The State Defendants say that the Plaintiffs cannot succeed on the merits of their constitutional claims because Texas law places no duty on the State Defendants to take more paper-ready prisoners from Cameron County's detention facilities than the State Defendants are already taking. This, Plaintiffs submit, is the central and only real issue for this Court to resolve in their case against the State Defendants.

First, Plaintiffs respond that more can be done in full compliance with Texas law to

immediately empty Cameron County's detention facilities of all paper-ready state prisoners.

TEX. GOV'T CODE ANN. § 499.125(a) (Vernon Supp. 1994) provides:

> If a state or federal court determines that conditions in a county
> jail are unconstitutional, and if on or after October 1, 1991, the
> percentage of inmates in the jail awaiting transfer to the
> institutional division is 20 percent or more of the total number
> of inmates in the jail, the commission shall transfer inmates
> from the jail to an appropriate jail, detention center, work
> camp, or correctional facility, but only to the extent necessary
> to bring the county into compliance with court orders or to
> reduce the percentage of inmates in the jail awaiting transfer to
> the institutional division to less than 20 percent of the total
> number of inmates in the jail.

The evidence at the preliminary-injunction hearing showed that of approximately 800

detainees in Cameron County's detention facilities on June 9, 1994, approximately 200 are

presently paper-ready and approximately 100 could be made paper-ready within days.

Thus, upon finding conditions at Cameron County's detention facilities unconstitutional, this

Court could immediately order the transfer of Cameron County's paper-ready prisoners and

put to rest the county's overcrowding problems that precipitated this lawsuit.

The State Defendants could argue that § 499.125(a) only requires the State to take

all but 20 percent of the total number of detainees at the jail, and no more. But the statute

reads in the disjunctive ("to the extent necessary to bring the county into compliance with

court orders *or* to reduce the percentage [to 20 percent]," *id.* (emphasis added)) and the

disjunctive reading best comports with Texas' overall statutory scheme for transferring state

prisoners from county to state custody.

This is why. Texas law requires that the Director of the Institutional Division of the

Texas Department of Criminal Justice "adopt rules for the safe transfer of inmates from the counties in which inmates are sentenced to the institutional division." TEX. GOV'T CODE ANN. § 500.006(a) (Vernon Supp. 1994). This case presents the question of *when* this transfer must take place. Only one statutory provision *other than § 499.125* speaks to this question. TEX. GOV'T CODE ANN. § 499.121 decrees that an allocation formula specified in TEX. GOV'T CODE ANN. § 499.071 will direct the influx of state-ready felons into Texas prisons, and that until the allocation formula requires transfer, the convicts are to stay in the county jails. In § 499.071, the legislature lists the relevant factors to be considered in determining the formula which allocates available prison space among Texas's many counties. Significantly, whether a county jail is overcrowded is *not* one of the seven explicit factors that § 499.071 requires to be considered in allocating available prison space to counties with paper-ready felons. In fact, Texas's legislature explicitly *forbids* waiver of the allocation formula for counties "in which the jail inmate population exceeds the approved capacity of the county's jail facility, as established by the Commission on Jail Standards." TEX. GOV'T CODE ANN. § 499.072. Thus, § 499.125 is the only provision in Texas law in which the legislature decided how to address the problem of unconstitutional overcrowding in county jails caused by a backlog of state-ready prisoners. *See* TEX. GOV'T CODE ANN. Ch. 499, Subch. F (Vernon Supp. 1994) (titled "Procedures for Reducing County Jail Backlog"). For a court to limit the relief available under § 499.125 to reducing the state-ready population to 20 percent of a facility's capacity, it would have to hold that the legislature recognized that unconstitutional overcrowding could result from a backlog of

state-ready prisoners under the legislature's allocation formula, but the legislature still selected an arbitrary limit of "20 percent of each facility's capacity" that the county has to detain even in cases of unconstitutional overcrowding. Restated, this reading of § 499.125 would mean that the legislature recognized that its allocation system could cause unconstitutional overcrowding, but deliberately chose to limit available remedies for overcrowding such that the overcrowding would not necessarily end.

Rather than attributing such illogicality and arbitrariness to the legislature, § 499.125 only needs to be read as written: in the disjunctive. This way, when a court finds a county jail unconstitutionally overcrowded and this is due in large part to the presence of state-ready prisoners, the legislature has provided that the State must take whatever number of detainees from the county that the court orders. The above-20-percent transfer alternative in § 499.125 becomes operative when a finding of unconstitutionality is made, but the court has not addressed whether prisoners should be transferred to the state. This could happen if detainees successfully sued a county for unconstitutional conditions, and afterward, the county maintained a separate action against the state under § 499.125. Though no court to date has applied § 499.125, Plaintiffs request its prompt use here to get the State Defendants to accept all of Cameron County's approximately 300 state-ready prisoners.

As a technical matter, the State Defendants could argue that § 499.125 only requires "the commission" to transfer state-ready prisoners, and none of the State Defendants are "the commission." No statute positively identifies "the commission" in § 499.125(a). If Plaintiffs' present suit against Texas and its Governor is insufficient to invoke § 499.125(a),

Plaintiffs move to amend their complaint to name as defendants whoever this Court finds to be "the commission," likely the Texas Commission on Jail Standards.

If this Court refuses to grant Plaintiffs relief against the State Defendants under § 499.125, it must then consider the State Defendants' duties to the people in Cameron County's detention facilities as described by *Alberti v. Sheriff of Harris County, Tx.*, 937 F.2d 984 (5th Cir. 1991). The *Alberti* court discussed in some detail "[t]he relative obligations of the state and the county," *id.* at 993-97, examining many similar suits in many states, and concluded that the State of Texas can be responsible for unconstitutional overcrowding in county jails if its officials are deliberately indifferent to overcrowding caused by a backlog of state-ready felons. *See also id. at 1000* ("We would, by necessity, affirm a finding that the state [of Texas] was deliberately indifferent. Indeed, such a finding on this record would be virtually unassailable."). The *Alberti* court repeatedly cites the following language from *Benjamin v. Malcom*, 803 F.2d 46 (2d Cir. 1986), another case quite similar to this one:

> [P]risoners whom [the state] refuses promptly to accept into its prisons are not those of some other state, country, or planet, but its own prisoners who have been convicted by New York State courts of New York felonies. The State cannot therefore wash its hands of its *federal constitutional responsibility* for the detention conditions of such prisoners because they are temporarily housed in City facilities or because a New York statute requires the State to accept them "forthwith."

*Id.* at 51 (emphasis in original), *cited in Alberti*, 937 F.2d at 995, 1001. *Alberti* left the State Defendants no room to argue that they have no constitutional duty to alleviate overcrowded conditions in county jails that are caused by backlogged state-ready felons.

## D. *Ruiz*'s Limitations on Remedy

The State Defendants argue that even if they are partially responsible for constitutional violations at Cameron County's detention facilities, *In re Clements*, 881 F.2d 145, 154 (5th Cir. 1989) precludes this Court from granting Plaintiffs the injunctive relief that they seek (requiring the State Defendants to remove state-ready prisoners from County custody).

*Clements* preceded the *Alberti* case cited above, but is part of the same *Alberti* litigation: a class of detainees sued Harris County for relief from overcrowded conditions, and Harris County filed a third-party claim against state officials, blaming the overcrowded county-jail conditions on the backlog of state-ready felons. Harris County "request[ed] judgment against [essentially the same State Defendants in Cameron County's case] 'ordering them to immediately remove from the Harris County Jail, all persons who are currently convicted felons ready for transfer to TDC[J-ID] ... and to continue thereafter' to do so. No other possible relief [was] specified." *Clements*, 881 F.2d at 148. The state defendants feared that if Judge DeAnda (who retained jurisdiction over *Alberti*) were to award this relief, it would interfere with the state defendants' ability to comply with Judge Justice's remedial orders in another important case, *Ruiz v. Scott*, No. H-78-987 (S.D. Tex., Houston Div.). *See Clements*, 881 F.2d at 152. In *Ruiz*, Judge Justice oversees the restoration of Texas's entire prison system to constitutional standards; Judge Justice has imposed population caps on Texas's prison system as part of his remedial decrees in *Ruiz*. Thus, the state defendants asked the *Clements* court to resolve the fundamental conflict

between *Alberti* and *Ruiz*: how could the state defendants comply with an order to take more prisoners in *Alberti* if they were to comply with the *Ruiz* orders to limit the number of prisoners they held?

The State Defendants claim that the relief requested in this case unduly interferes with *Ruiz* just as the *Clements* court decided that the relief requested in *Alberti* unduly interfered with *Ruiz*, necessitating transfer of jurisdiction of the remedial phase of this litigation to the *Ruiz* court. This court must examine the reasoning in *Clements* to tell whether similarities between this case and *Alberti* can limit this Court's remedial jurisdiction.

The *Clements* court began by stressing that "[w]hether, and if so to what extent" it will force a transfer of remedial jurisdiction depends upon the "particular circumstances" of each case. *Clements*, 881 F.2d at 152. The court flatly stated that "[o]ur only purpose is to avoid having a non-*Ruiz* court entertain the issuance of a decree that might *directly and substantially* affect happenings within the Texas prison system." *Id.* at 154 (emphasis added). Considering the 3600 state-ready felons sought to be transferred to state custody from Harris County, the court explained:

> Here, it is clear that granting the relief sought in *Alberti* against [state officials] 'might affect the Texas prison system.' *We do not suggest that minor or indirect effects* [would hobble the effect of the *Ruiz* court's orders in contravention of prior case law]. But here we are dealing with the county having the largest population in Texas, apparently accounting for 25 percent of TDC[J-ID]'s 'intake.' Ordering that thousands of county inmates be promptly taken into TDC[J-ID] prisons is certainly something which would have a direct and substantial effect on 'the Texas prison system.'

*Id.* at 153 & n.16 (emphasis added).  Accordingly, the court

> conclude[d] that mandamus should issue requiring the transfer
> to the judge presiding over the *Ruiz* case, of so much of the
> *remedy* portion of the *Alberti* third-party action against [the
> state officials] as seeks to enjoin them to receive or take
> prisoners into TDC[J-ID] confinement (or to otherwise take
> action in the operation or management of TDC[J-ID]-operated
> confinement facilities).

*Id.*

The State Defendants here can point to no language in *Clements* or any other
opinion that affects this Court's remedial jurisdiction in this case.  *Clements* is repeatedly
and explicitly limited to its facts, and the relief ordered in that case runs only against Harris
County.  *Id.* at 155.

Moreover, *Clements* gives no indication that the Fifth Circuit would order this Court
to transfer any remedial jurisdiction to the *Ruiz* court even if the State Defendants asked for
this relief.  In crafting its order, the *Clements* court carefully stressed the certain and
substantial impact that an immediate influx of 3600 inmates to the Texas prison system
would have on *Ruiz*.  An appropriate order in this case would require the transfer of less
than 300 prisoners, many of whom the State Defendants could soon release on parole.  And
Cameron County generates only a small fraction of the state-ready felons that Harris
County generates, again undermining the substantiality of any impact that this Court's
remedial order could have on Texas's 77,000-bed (and growing) prison system.

To this impact-substantiality argument, the State Defendants could respond that
while taking all of Cameron County's backlogged state-ready prisoners may not affect

Texas's prison system, the system (and *Ruiz* compliance) would be devastated if this Court's remedial order were repeated in other counties. Plaintiffs response is that the State Defendants have not introduced evidence that so many county jails are unconstitutionally overcrowded that remedying all of these unconstitutional conditions would substantially impact Texas's prison system. Absent such evidence, this Court need only consider the dire situation of Cameron County and its detainees, and whether relief in this case would compromise the State Defendants' ability to comply with *Ruiz* orders. This response reemphasizes the point that the present allocation formula in Tex. Gov't Code Ann. § 499.071-072 does not account for unconstitutional overcrowding in county jails, and some mechanism for forcing the State Defendants to take this factor into account when distributing prison space among the counties must be found.

Finally, if this Court still feels somehow constrained by *Clements*, Plaintiffs ask that the Court notice the very limited transfer of remedial authority ordered by the *Clements* court. Specifically, the *Clements* court did not restrain Judge DeAnda in *Alberti* from ordering that the state defendants take custody of at least some of the 3600 Harris County state-ready detainees, and place these people in uncrowded county jails. *See Clements*, 881 F.2d at 153. Similar relief would fully satisfy Plaintiffs in this case without any chance of encroaching on *Clements*, though Plaintiffs maintain as above that *Clements* is distinguishable and wholly inapplicable.

E. Money

Finally, the State Defendants argue that since they have paid Cameron County

money both to build an additional 192-bed facility, and to house state-ready felons on an inmate-per-day basis, they should not be ordered to take custody of more state-ready felons.

Plaintiffs' sole object in securing relief against the State Defendants has always been, and remains, to force the State Defendants to take the number of state-ready felons from Cameron County custody that is necessary to alleviate unconstitutional overcrowding in Cameron County's detention facilities. Testimony at the preliminary injunction hearing established that the daily rate paid to Cameron County for detaining state-ready felons is used to pay for guards, food, utilities, medical care, etc. The State Defendants did not argue, nor have they produced evidence to establish that this money can be used to build additional detention facilities. Thus, this money has no effect on the overcrowded conditions caused by the presence of state-ready felons, and cannot substitute for the necessary injunctive relief against the State Defendants.

Of course, the same is not true of the money provided to build the additional 192-bed facility. Once this facility is operational, it will surely lessen the overcrowding that prompted Plaintiffs' suit against the State Defendants, and must be accounted for in any relief ordered against them. However, this fact does not make injunctive relief against the State Defendants inappropriate.

First, the State Defendants cannot be allowed to ignore the dire present situation in Cameron County's detention facilities if the Court finds them responsible for the situation. Immediate relief is necessary, and it should not be denied because the State Defendants think that new facilities will open in days or weeks or months.

And unless this Court orders the State Defendants to take custody of a significant number of their prisoners, Cameron County's detention facilities will still be overcrowded after the new facility becomes operational.  Over 800 detainees were present in the facilities at the time of the preliminary injunction hearing.  The new facility will raise the design capacity of Cameron County's detention facilities to only 742.  Moreover, as specified at the hearing, the Texas Commission on Jail Standards requires that jails be maintained at only 85% of capacity to allow for classification, isolation of discipline problems, assault avoidance, and emergency surges in detention intake (i.e. a major civil disturbance necessitating widespread arrests).  Allowing for this factor means that only 630 people should be detained in Cameron County facilities even after the new facility is operational, leaving approximately 170 people as appropriate subjects of this Court's injunctive relief.

Finally, the State Defendants rely on their evidence that they are presently engaged in a massive building effort, and they argue that this effort will *eventually* relieve overcrowding in Cameron County, so this court should "wait and see" how things turn out. But this argument virtually admits that unconstitutional conditions will then have to be permitted to persist for some indeterminate time.  Moreover, the hearing testimony indicated that even with the State's building program, backlogs will persist in county jails, and backlog size will depend on crime rates, predictions of which have been historically inaccurate.  As evidence of the State Defendants' inaccurately optimistic predictions, Plaintiffs point straight to *Clements*, an *August 1989* opinion:

> we note that there appears to be reason to believe that
> significant "backing up" of TDC[J-ID]-bound prisoners in

CIMPDF - www.fesisa.com

> county jails may not long continue. [The state defendants]
> inform us that 'by April of next year TDC[J-ID] anticipates
> obtaining a net gain of [about 31,300 beds] in a massive
> criminal justice reform package ..."

881 F.2d at 154. The State Defendants, or their predecessors in office, made these statements well before the state-ready prisoner population in Cameron County's detention facilities exploded, causing the present unconstitutional conditions. The State Defendants have produced insufficient evidence to support a finding that while their predictions were wrong before, this time they are correct. And if the State Defendants end up being correct in their predictions, this Court's injunction will impose a minimal burden on them. Nothing requires this Court to "wait and see," and Plaintiffs urge the Court to exercise its equitable power in this case to timely grant Plaintiffs the only remedy they can practically secure, and make the State Defendants fix the problem that they helped create.

For all of these reasons, Plaintiffs contend that the State Defendants have presented no argument or evidence indicating that this Court cannot immediately grant injunctive relief against them.

## II. Plaintiffs' Evidence in Support of Injunctive Relief

Plaintiffs recognize that, to get preliminary injunctive relief, they must have made a clear showing of 1) a substantial likelihood of success on the merits, 2) a likelihood of irreparable injury, 3) a favorable balance of hardships, and 4) that injunctive relief is in the public interest.

A. Success on the Merits

The Court has ample evidence before it from which it can find that over 800 people

are crammed into facilities designed for an absolute maximum of 546, that approximately

300 of these detainees are state-ready felons, and that various conditions caused by this

overcrowding cause unconstitutional punishment to be inflicted upon the detainees. As

described above, ample evidence supports a finding of deliberate indifference on behalf of

the State Defendants, and *Alberti* establishes beyond doubt that the State Defendants are

responsible for unconstitutional conditions in a county jail caused by a backlog of state-

ready felons. *See* 937 F.2d at 993-97; *see also* TEX. GOV'T CODE ANN. § 499.125. No

element necessary to support injunctive relief against the State Defendants is left

unsupported by evidence; Plaintiffs are confident that they have established a likelihood of

success on the merits.

B. Irreparable Injury

     Prospective denial of constitutional rights constitutes irreparable harm that supports a

preliminary injunction. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Deerfield Medical

Center v. City of Deerfield*, 661 F.2d 328, 338 (5th Cir. 1981); *Gillard v. Carson*, 348 F.

Supp. 757, 762 (M.D. Fla. 1972).

C. Balance of Hardships

     The hardship faced by Plaintiffs is continued confinement in an unconstitutionally

overcrowded jail. The hardship faced by the State Defendants is the administrative and

financial burden of taking immediate custody of fewer than 300 state-ready felons and

placing them in any uncrowded facility chosen by the State Defendants. Even against a

significant administrative burden, courts have found that the loss of constitutional rights is

the greater hardship.  *See e.g. Tracy v. Salamack*, 440 F. Supp. 930, 933 (S.D.N.Y. 1977),

*aff'd and modified*, 572 F.2d 393 (2d Cir. 1978).

D. Public Interest

Plaintiffs rely on the Court's exposure to the evidence of jail conditions in this case

in arguing that the public's interest is best served by immediately alleviating the

overcrowded conditions.  *Cf. Murillo v. Musegades*, 809 F. Supp. 487, 497-98 (W.D. Tex.

1992) ("The public interest will be served by [granting preliminary injunctive relief to]

protect ... Plaintiffs' constitutional rights.").

## III. Conclusion

Accordingly, Plaintiffs ask this Court to enjoin the State Defendants to immediately

take custody of the number of state-ready felons necessary to reduce the population of

Cameron County's detention facilities to 85 percent of design capacity.  The State

Defendants should be further enjoined to return once each month and take custody of the

number of state-ready felons necessary to reduce the population of Cameron County's

detention facilities to 85 percent of design capacity.

Respectfully submitted,

*Ed Stapleton*   by Jerome
Wesevich with
permission.
_____
Ed Stapleton
State Bar No. 19057400
Federal I.D. 1501
COSTILLA & STAPLETON, P.C.
1325 Palm Boulevard
P.O. Box 4417
Brownsville, Texas 78520
210/541-4981
210/544-3152 (FAX)

ATTORNEY IN CHARGE
FOR PLAINTIFF CLASS

## CERTIFICATE OF SERVICE

This is to certify that on this 18th day of July, 1994, a true and correct copy of the above PLAINTIFFS' POST-HEARING BRIEF ON PRELIMINARY INJUNCTION AGAINST STATE DEFENDANTS has been served on the following counsel as follows:

Mr. Richard O. Burst
Assistant County Attorney
Cameron County, Texas
974 E. Harrison Street
Brownsville, Texas 78520
CM/RRR and Hand Delivered

Mr. John B. Worley
Assistant Attorney General
P.O. Box 12548
Capitol Station
Austin, Texas 7811-2548
CM/RRR and Fax to 512/463-2084

*Ed Stapleton*   by Jerome Wesevich
with Permission.
_____
Ed Stapleton

Post-Hearing Brief
Page 19