# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE RAUL CASTILLO, *et al.*, | § § | |
| Plaintifffs, | § § | |
| V. | § § | |
| CAMERON COUNTY, TEXAS | § | NO. B-93-260 |
| Defendant and Third-Party Plaintiff, | § § § | |
| V. | § § | |
| THE STATE OF TEXAS, | § | |
| Defendant, and | § § | |
| ANN RICHARDS, *et al.*, Third-Party Defendants and Defendants. | § § § | |

SEP 27 1994

## DEFENDANT THE STATE OF TEXAS' AND DEFENDANTS AND THIRD-PARTY DEFENDANTS ANN RICHARDS, ET AL.'S MOTION TO VACATE OR, IN THE ALTERNATIVE, TO ALTER OR AMEND THE PRELIMINARY INJUNCTION ORDER UNDER FED. RULE CIV. PROC. 59 AND REQUEST FOR A TRIAL SETTING

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME the State of Texas, Ann Richards, Governor of Texas, James A. Collins, Executive Director of the Texas Department of Criminal Justice ("TDCJ"), Carol S. Vance, Jerry H. Hodge, Joshua W. Allen, Sr., Thomas Dunning, Allan B. Polunsky, R. H. Duncan, Sr., Ellen J. Halbert, and John R. Ward, members of the Texas Board of Criminal Justice ("State Defendants"), by and through their attorney, Dan Morales, Attorney General of Texas, and file this Motion to Vacate or, in the

Alternative, to Alter or Amend the Preliminary Injunction Order under Fed. Rule Civ. Proc. 59[1] and Request for a Trial Setting.

## I.

## THE PRELIMINARY INJUNCTION SHOULD BE VACATED

### A.  The Order is Unnecessary and Moot

At page 9 of the preliminary injunction order, the Court stated:

> The first two of State Defendants' responses [to jail crowding] are perfectly targeted to alleviate county-jail overcrowding while meting out fair punishment to convicted criminals, and are thus applauded and encouraged by this Court. These responses do not reasonably address Plaintiffs' constitutional complaints, however, because they obviously take too long to implement. While the State Defendants' building programs may well reasonably respond to the general problem of jail overcrowding at a future time, these programs do not represent reasonable responses to the constitutional deprivations suffered by Plaintiffs. The State Defendants simply cannot avoid liability for causing some detainees to suffer objectively intolerable conditions by arranging to improve conditions for future detainees.

But this key presupposition of the preliminary injunction order - that State Defendants' program to reduce jail crowding would not be immediately effective - is incorrect. As State Defendants showed in their recent Advisory to the Court, they have drastically reduced the number of paper-ready inmates in the jail, and, as a result of the removal of these inmates and the addition of the new 192-bed facility they financed, the jail is now below design capacity. Indeed, the jail has been below design capacity at least since September 1, 1994, according to the monthly population reports of the Texas Commission on Jail Standards. The Court's preliminary injunction order was thus moot before it was even issued.

---

[1] State Defendants have not been able to determine from their research whether a Rule 59 motion applies to preliminary injunctions. It may be that a motion to vacate or modify a preliminary injunction can be made freely at any time before the final decision in the case. State Defendants are styling this a Rule 59 motion as a matter of caution.

2

Because the preliminary injunction order is based on the incorrect premise that State Defendants' ameliorative measures would not be immediately effective, it also runs counter to well-established authority that federal courts should not impose superintending injunctions on state officials unless it is absolutely necessary to do so. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). It also runs counter to the principle that preliminary injunctive relief should be granted only where necessary to prevent irreparable harm. *United Offshore Co. v. Southern Deepwater Pipeline*, 899 F.2d 405, 407-08 (5th Cir. 1990). Since State Defendants have fixed any alleged problem with the Cameron County jail that they might be held accountable for and there is at the least no immediate threat that crowding will recur, the preliminary injunction order is both overly intrusive and unnecessary. The Court should therefore vacate it.

B.  **The Order Rests on Findings that the Evidence Does Not Support**

In addition, the preliminary injunction order's ascription of probable liablity to State Defendants rests on a number of other findings that are either contrary to the record or that State Defendants can demonstrate at trial to be incorrect. For example, with respect to jail conditions, the Court finds that "[f]ighting requiring medical attention has increased with the steady increase in jail population." However, there is no evidence that fighting has increased disproportionately to population and that crowding has thus increased the frequency of fights per capita. State Defendants' jail expert, Gary DeLand, has conducted an extensive study of the correlation between violence and crowding in the Cameron County jail and would be able to testify at trial that in fact crowding does not appear to have increased the frequency of fights per capita.

In addition, the order rests on the unsupported assumption that State Defendants could have placed inmates in other county jails or private facilities and relieved crowding in the Cameron County jail in that way. Had State Defendants had some

3

notice that this issue was going to be a factor in the Court's decision-making,[2] they could have put on evidence that as a practical matter there was, at the time of the hearing and many months before, too little available space in other county jails or private facilties for TDCJ to have solved Cameron County's crowding problem by placing Cameron County inmates in such facilities.

The Court's finding on State Defendants' knowledge of conditions in the Cameron County jail is also based on faulty assumptions. The Court finds that State Defendants did have the requisite knowledge. Its finding is based, apparently, on two assumptions: (1) that unconstitutional conditions were obvious from the overcrowding, and (2) that TDCJ could and should have investigated conditions in the jail but deliberately chose not to do so. But "overcrowding," understood merely as exceeding design capacity, cannot be equated with unconstitutionality. *Rhodes v. Chapman*, 452 U.S. 337, 349-50 n. 15, 101 S.Ct. 2392, 2401 n.15 (1981); *Bell v. Wolfish*, 441 U.S. 520, 541-43, 99 S.Ct. 1861, 1875-76 (1979). The alleged unconstitutionality of the jail thus cannot rightly be thought to have been obvious to state officials merely because the population of the jail was exceeding its design capacity.

As for investigating jail conditions, TDCJ has neither the duty nor the ability to investigate jail conditions. TDCJ does not employ jail inspectors (as State Defendants could establish at trial). The Commission on Jail Standards, which is not a party to this case,[3] is charged with inspecting jails but then not for constitutionality but merely for compliance with Commission standards, *see* TEX. GOV'T CODE ANN. §§ 511.009-

---

[2] To the best recollection of counsel for State Defendants, neither the plaintiffs nor the County have ever raised this issue.

[3] The plaintiffs have attempted to sue the State in its own name but, as argued in State Defendants' Motion to Dismiss, this attempted suit is barred under the Eleventh Amendment. State Defendants thus cannot be charged with liability for any action or inaction of the Commission on Jail Standards through plaintiffs' attempted suit of the State.

511.014 (Vernon 1990), which cannot be assumed to be the equivalent of constitutional standards. *Balli v. Haynes*, 804 F.2d 306, 308 (5th Cir. 1986). TDCJ has no statutory authority to inspect jails. In fact, except arguably for Pardons and Paroles Division employees who enter jails to interview inmates for parole consideration[4] (and who are not jail inspectors), TDCJ employees do not even have the right to *enter* a jail without the consent of the sheriff. *Compare* TEX. GOV'T CODE ANN. § 511.010 (Vernon 1990) (giving Jail Standards Commission employees access to county jails). TDCJ officials thus cannot fairly be charged with knowledge of conditions in the Cameron County jail because they did not investigate those conditions before the institution of this suit. Moreover, the investigation TDCJ did after the instigation of this suit, through its expert consultant, Gary DeLand, did not reveal infirmities of a constitutional dimension in the jail.

Finally, with respect to State Defendants' response to overcrowding, State Defendants do not believe that there is any record support for the finding that "the State Defendants' suggestion that the County could have gotten a million dollars more in *per diem* payments and applied it all to jail construction fails to recognize that at least two thirds of this million dollars would have been applied toward the cost of maintaining the State's prisoners under substandard conditions." Preliminary Injunction Order at 11. First, the amount of money the County failed to collect is a million dollars *a year* since the payments began, for a total of about three million dollars. Since the County was making a profit from the money it *was* collecting from the State to maintain paper-ready prisoners, that money was obviously more than matching the County's expenditures on those prisoners. In fact, there was money left over to maintain those prisoners in better than "substandard conditions." Indeed, State Defendants will be able to prove at trial "that they provided funds that were sufficiently in excess of that

---

[4] *See* TEX. GOV'T CODE ANN. § 511.0121 (Vernon Supp. 1994) (implicitly requiring counties to cooperate in the parole in absentia program).

necessary to adequately care for state-ready detainees to provide for the extra medical care and guard protection due the County's pre-trial detainees as a result of the state-ready felons' presence." Preliminary Injunction Order at 11. (Also, State Defendants will be able now, after discovery, to provide more precise and accurate estimates of the amounts by which the County has profited from payments on paper-ready inmates.)

State Defendants also cannot be faulted for not monitoring the County's use of this money, as the preliminary injunction order suggests at 12. State Defendants do not have the authority to monitor the way the County uses the money, much less to control it. Not even the Commission on Jail Standards has that authority. But even though State Defendants cannot monitor or control those payments and, partly for that reason, cannot completely discharge their duty through them, *see Harris v. Angelina County v. the Texas Department of Criminal Justice*, No. 93-4967 (5th Cir., September 13, 1994), slip opin. at 6392-93, State Defendants' provision to the County of the wherewithal to take care of the needs of the prisoners in its jail should at least count as one aspect of an overall "reasonable response" to the crowding problem. The Court should not break State Defendants' response into pieces and then assess whether each of them is sufficient by itself - as the order seems to indicate - but rather should consider the reasonableness of the response as a whole.

C.  **The New Federal Crime Control Act**

Under the new federal crime control act, Congress has imposed more stringent standards of proof in prison and jail overcrowding cases. The pertinent part of the Act is as follows:

> SEC. 20409.   APPROPRIATE REMEDIES FOR PRISON OVERCROWING.
>
> (a) AMENDMENT OF TITLE 18, UNITED STATES CODE - Subchapter C of chapter 229 of part 2 of title 18, United States Code, is amended by adding at the end the following new section:

6

"§3626. Appropriate remedies with respect to prison overcrowding.

"(a) REQUIREMENT OF SHOWING WITH RESPECT TO THE PLAINTIFF IN PARTICULAR. --

"(1) HOLDING. - A Federal court shall not hold prison or jail crowding unconstitutional under the eighth amendment except to the extent that an individual plaintiff inmate proves that the crowding causes the infliction of cruel and unusual punishment of that inmate.

"(2) RELIEF. - The relief in a case described in paragraph (1) shall extend no further than necessary to remove the conditions that are causing the cruel and unusual punishment of the plaintiff inmate.

"(b) INMATE POPULATION CEILINGS. --

"(1) REQUIREMENT OF SHOWING WITH RESPECT TO PARTICULAR PRISONERS. - A Federal court shall not place a ceiling on the inmate population of any Federal, State or local detention facility as an equitable measure for conditions that violate the eighth amendment unless crowding is inflicting cruel and unusual punishment on particular identified prisoners.

\* \* \*

See **Exhibit A**, excerpt from the new federal crime control act.

At the preliminary injunction hearing, only one inmate testified. The only deprivation this inmate complained of was the temporary cut-off of water, which was an isolated event in no way connected to crowding or any other systemic deficiency in the jail. The inmate also testified about a disturbance, but when questioned about this incident, it turned out that it was nothing more than the inmates in one dormitory making a lot of noise. The inmate who testified was not harmed in this disturbance. In fact, the only injury was to a jail officer who slipped and fell on wet floor after the disturbance, suffering a hematoma. Plaintiffs have failed utterly to show harm from crowding to any particular identifed plaintiff inmate.

It is particulary noteworthy that none of the class representatives in this case testified to any harm from crowding or any other deprivaton of his or her basic human needs. In that regard, the Court has never certified a class with respect to the claims against the State Defendants, and State Defendants object to the granting of relief to a

7

class certified before their entry in the lawsuit, when they had no opportunity to contest certification, and that has not been certified with respect to claims against them. Before relief can be granted to a class at the expense of State Defendants, the Court must certify a class having claims against State Defendants and that class must have proper class representatives who would be able to demonstrate, in accordance with the federal crime control act and Fed. Rule Civ. Proc. 23, that they have suffered constitutional harm.

## II.

## IF NOT VACATED, THE PRELIMINARY INJUNCTION SHOULD BE MODIFIED

### A. The County Should Be Enjoined to Keep the Jail Under the Cap.

Assuming *arguendo* that conditions in the Cameron County jail are unconstitutional and that a preliminary injunction is in order to remedy those conditions, the injunction that the Court has issued should be modified. The biggest flaw in the injunction is, as noted in footnote 3 of State Defendants' recent Advisory to the Court[5], that it does not require the County to refrain from causing the population of the jail to exceed design capacity. If there is to be preliminary injunctive relief, the County should be required to do more than plan for future needs of the jail; it too should be enjoined from taking any action to cause the population of the jail to exceed the court-ordered cap. In particular, it should be enjoined from admitting federal prisoners into the jail when that will cause or threaten to cause the cap to be exceeded. The Court should declare that any obligation to the contrary that the County may have under any contract with the federal government is superseded by the Court's order.

---

[5] This Advisory was sent to the Court by overnight mail on September 23, 1994. State Defendants adopt, incorporate herein by reference and urge the Advisory in its entirety in support of this motion.

8

## B. Design Capacity Should Not Be the Court-Ordered Cap.

State Defendants object to the Court's presumption that design capacity is the constitutional capacity and its imposition on them of the burden of proving that some higher population is the constitutional limit. The record does not support this presumption, and it is contrary to well-established case law. Moreover, it is the plaintiffs' burden to justify any limitation on the jail's population, especially under the recent Federal Crime Control Act. The new 18 U.S.C. § 3626(a)(2) requires that any relief in a jail overcrowding case "shall extend no further than necessary to remove the conditions that are causing the cruel and unusual punishment of the plaintiff inmate." Thus a cap on a jail can go only as low as a plaintiff shows that it must to cure the alleged unconstitutional harm. *Accord, Ruiz v. Estelle*, 679 F.2d 1118, 1145 (5th Cir. 1982), *modified on other grounds*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438 (1983) (when enjoining state officials, court must fashion "the least intrusive remedy that will still be effective"). Plaintiffs have not shown that the alleged unconstitutionality in the jail can only be cured by limiting the jail's population to design capacity. Nor does the preliminary injunction order point to evidence that would justify picking design capacity as the limit.

The failure of the order to justify the selection of design capacity as the population limit is actually another reason to vacate the order entirely, since apparently it is not clear from the evidence before the Court what limit really is necessary to establish constitutional conditions. The Court should not impose a remedy without knowledge of what remedy is in fact necessary. Thus, the order should be vacated at least pending a trial at which evidence can be presented to ascertain what the constitutional capacity of the jail truly is.

But, if the Court does maintain the temporary cap at design capacity, it should grant State Defendants the opportunity to show that the cap should be higher and then modify the cap accordingly. Although State Defendants object to the Court placing on

9

them the burden of establishing that the constitutional capacity is higher than design capacity, they expect that they will be able to present evidence to that effect. State Defendants request the opportunity to do so at trial.

### III.

### REQUEST FOR A TRIAL SETTING

It is obvious from the foregoing that State Defendants still have evidence to present to the Court that could bear on the ultimate decision in this case. State Defendants therefore request that the Court set a date for a trial at which they can present this evidence.

### IV.

### CERTIFICATE OF CONFERENCE

Counsel for State Defendants has contacted counsel for the County and the plaintiffs about this motion, and counsel have not been able to reach agreement at this time.

### V.

### REQUEST FOR RELIEF

For the foregoing reasons, State Defendants request that the Court vacate its preliminary injunction order or, in the alternative, modify it as indicated above, and, in either event, set a date for a trial at which the parties can present further evidence bearing on the ultimate decision in this case. State Defendants further request any other relief to which they may be entitled or which the Court may find just, equitable or proper.

Respectfully submitted,

DAN MORALES
Attorney General of Texas

10

JORGE VEGA
First Assistant
  Attorney General

DREW T. DURHAM
Deputy Attorney General
  for Criminal Justice

ANN KRAATZ
Assistant Attorney General
Chief, Law Enforcement Defense Division

\*Attorney-in-Charge

*[signature: John B. Worley for, by permission]*

ROBIN SANDERS\*
Assistant Attorney General
Assistant Chief, Law Enforcement
  Defense Division
State Bar No. 09310900

*[signature: John B. Worley]*

JOHN B. WORLEY
Assistant Attorney General
State Bar No. 22001480


P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
(512) 463-2034
(512) 463-2084 (FAX)

ATTORNEYS FOR
STATE DEFENDANTS

11

## CERTIFICATE OF SERVICE

I do hereby certify that the foregoing Defendants and Third-Party Defendants the State of Texas, et al.'s Motion to Vacate or, in the Alternative, Alter or Amend the the Preliminary Injunction Order under Fed. Rule Civ. Proc. 59 and Request for a Trial Setting will be served by United States Mail, certified mail, on the 26th day of September, 1994 to LUIS V. SAENZ, Cameron County District Attorney, and RICHARD O. BURST, Assistant County Attorney, 974 E. Harrison St., Brownsville, TX 78520; ED STAPLETON, Costilla & Stapleton, P.C., 1325 Palm Boulevard, P. O. Drawer 4417, Brownsville, TX 78520; JUAN JOSE MARTINEZ, P. O. Box 8099, Brownsville, TX 78520; and CARTER C. WHITE, 252 Juanita Way, San Francisco, CA 94127.

_____
JOHN B. WORLEY
Assistant Attorney General

mo09234.cc

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE RAUL CASTILLO, *et al.*, | § § § | |
| Plaintifffs, | § § | |
| V. | § § | |
| CAMERON COUNTY, TEXAS | § | NO. B-93-260 |
| Defendant and Third-Party Plaintiff, | § § | |
| V. | § § | |
| THE STATE OF TEXAS, | § | |
| Defendant, and | § § | |
| ANN RICHARDS, *et al.*, | § | |
| Third-Party Defendants and Defendants. | § § | |

# EXHIBIT A

## TO

DEFENDANT THE STATE OF TEXAS' AND
DEFENDANTS AND THIRD-PARTY DEFENDANTS
ANN RICHARDS, ET AL.'S
MOTION TO VACATE OR, IN THE ALTERNATIVE, TO
ALTER OR AMEND THE PRELIMINARY INJUNCTION
ORDER UNDER FED. RULE CIV. PROC. 59
AND REQUEST FOR A TRIAL SETTING

ClibPDF - www.fastio.com

## 34

**SEC. 20408. AMENDMENTS TO THE DEPARTMENT OF EDUCATION ORGANIZATION ACT AND THE NATIONAL LITERACY ACT OF 1991.**

(a) TECHNICAL AMENDMENT.—The matter preceding paragraph (1) of section 214(d) of the Department of Education Organization Act (20 U.S.C. 3423(d)) is amended by striking "under subsection (c)" and inserting "under subsection (e)".

(b) ESTABLISHMENT OF A PANEL AND USE OF FUNDS.—Section 601 of the National Literacy Act of 1991 (20 U.S.C. 1211-2) is amended—

(1) by redesignating subsection (g) as subsection (i); and
(2) by inserting after subsection (f) the following new subsections:

"(g) PANEL.—The Secretary is authorized to consult with and convene a panel of experts in correctional education, including program administrators and field-based professionals in adult corrections, juvenile services, jails, and community corrections programs, to—

"(1) develop measures for evaluating the effectiveness of the programs funded under this section; and

"(2) evaluate the effectiveness of such programs.

"(h) USE OF FUNDS.—Notwithstanding any other provision of law, the Secretary may use not more than five percent of funds appropriated under subsection (i) in any fiscal year to carry out duties related activities such as monitoring technical assistance, and replication and dissemination."

**SEC. 20409. APPROPRIATE REMEDIES FOR PRISON OVERCROWDING.**

(a) AMENDMENT OF TITLE 18, UNITED STATES CODE.—Subchapter C of chapter 229 of part 2 of title 18, United States Code, is amended by adding at the end the following new section:

"§ 3626. Appropriate remedies with respect to prison crowding

"(a) REQUIREMENT OF SHOWING WITH RESPECT TO THE PLAINTIFF IN PARTICULAR.—

"(1) HOLDING.—A Federal court shall not hold prison or jail crowding unconstitutional under the eighth amendment except to the extent that an individual plaintiff inmate proves that the crowding causes the infliction of cruel and unusual punishment on that inmate.

"(2) RELIEF.—The relief in a case described in paragraph (1) shall extend no further than necessary to remove the conditions that are causing the cruel and unusual punishment of the plaintiff inmate.

"(b) INMATE POPULATION CEILINGS.—

"(1) REQUIREMENT.—A Federal court shall not place a ceiling on the inmate population of any Federal, State, or local detention facility as an equitable remedial measure for conditions that violate the eighth amendment unless crowding is inflicting cruel and unusual punishment on particular identified prisoners.

"(2) RULE OF CONSTRUCTION.—Paragraph (1) shall not be construed to have any effect on Federal judicial power to issue

## 35

equitable relief other than that described in paragraph (1), including the requirement of improved medical or health care and the imposition of civil contempt fines or damages, where such relief is appropriate.

"(c) PERIODIC REOPENING.—Each Federal court order or consent decree seeking to remedy an eighth amendment violation shall be reopened at the behest of a defendant for recommended modification as a minimum of 2-year intervals.

"(d) APPLICATION OF AMENDMENT.—Section 3626 of title 18, United States Code, as added by paragraph (1), shall apply to all outstanding court orders on the date of enactment of this Act. Any State or municipality shall be entitled to seek modification of any outstanding eighth amendment decree pursuant to that section.

"(e) TECHNICAL AMENDMENT.—The subchapter analysis for subchapter C of chapter 229 of title 18, United States Code, is amended by adding at the end the following new item:

"3626. Appropriate remedies with respect to prison crowding.".

(d) SUNSET PROVISION.—This section and the amendments made by this section are repealed effective as of the date that is 5 years after the date of enactment of this Act.

**SEC. 20410. CONGRESSIONAL APPROVAL OF ANY EXPANSION AT LORTON AND CONGRESSIONAL HEARINGS ON FUTURE NEEDS.**

(a) CONGRESSIONAL APPROVAL.—Notwithstanding any other provision of law, the existing prison facilities and complex at the District of Columbia Correctional Facility at Lorton, Virginia, shall not be expanded unless such expansion has been approved by the Congress under the authority provided to Congress in section 446 of the District of Columbia Self-Government and Governmental Reorganization Act.

(b) SENATE HEARINGS.—The Senate directs the Subcommittee on the District of Columbia of the Committee on Appropriations of the Senate to conduct hearings regarding expansion of the prison complex in Lorton, Virginia, prior to any approval granted pursuant to subsection (a). The subcommittee shall permit interested parties, including appropriate officials from the County of Fairfax, Virginia, to testify at such hearings.

(c) DEFINITION.—For purposes of this section, the terms "expanded" and "expansion" mean any alteration of the physical structure of the prison complex that is made to increase the number of inmates incarcerated at the prison.

**SEC. 20411. AWARDS OF PELL GRANTS TO PRISONERS PROHIBITED.**

(a) IN GENERAL.—Section 401(b)(8) of the Higher Education Act of 1965 (20 U.S.C. 1070a(b)(8)) is amended to read as follows:

"(3) No basic grant shall be awarded under this subpart to any individual who is incarcerated in any Federal or State penal institution.".

**SEC. 20412. EDUCATION REQUIREMENT FOR EARLY RELEASE.**

Section 3624(b) of title 18, United States Code, is amended—

(1) by inserting "(1)" after "(b)"—